# ORIGINAL

FILED

FEB - 3 2016

U.S. COURT OF
FEDERAL CLAIMS

## In the United States Court of Federal Claims

No. 15-367C
(Filed: February 3, 2016)*
**\*Opinion originally filed under seal on January 14, 2016**

| | | |
|---|---|---|
| JACQUELINE R. SIMS,<br>d/b/a JRS STAFFING SERVICES,<br><br>    *Pro Se* Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Bid Protest; Pro Se, Nonresponsibility<br>Determination; Denial of Certificate of<br>Competency; Capability to Perform |

*Jacqueline R. Sims*, Lawrenceville, GA, *Pro Se* plaintiff.

*Michael A. Rodriguez*, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Robert E. Kirschman, Jr.*, Director,  and *Steven J. Gillingham*, Assistant Director Commercial Litigation Branch, for defendant. *Pawandeep K. Chatha*, Assistant General Counsel, Federal Bureau of Prisons, Washington, DC and *Sabrina C. Daly*, U.S. Small Business Administration, Washington, DC, of counsel.

## OPINION

**FIRESTONE**, *Senior Judge*

   This post-award bid protest comes before the court on the parties' cross motions

for judgment on the administrative record pursuant to Rule of the Court of Federal

Claims ("RCFC") 52.1.  Also pending is the second motion of plaintiff Jacqueline R.

Sims d/b/a JRS Staffing Services ("JRS" or "Ms. Sims") to supplement the administrative

record.  At issue is a Bureau of Prisons ("BOP") small business set-aside contract for a

horticulture instructor at the Federal Prison Camp ("FPC") in Alderson, West Virginia.

JRS was denied the contract after the contracting officer ("CO") determined JRS was

"nonresponsible" because JRS lacked capacity to perform under the terms of the contract.

Pursuant to FAR § 19.602-1(a)(2), the CO referred the matter to the Small Business

Administration ("SBA").[1]  The SBA evaluated JRS's application and also determined

that JRS lacked the capacity to perform the contract.  Consequently, the SBA denied

JRS's application for a certificate of competency ("COC").[2]

Both agencies' findings were based primarily on the fact that JRS and its affiliate,

JRS Management, also owned and operated by Ms. Sims, had a history of submitting bids

on government contracts, but being unable or unwilling to perform once the contracts are

awarded.  On several occasions, the BOP had offered Ms. Sims a contract for instruction

of various classes in federal prisons, but plaintiff chose not to accept the contract in favor

of another opportunity or was unable to meet the contract requirements in a timely

manner.  Of particular concern was the fact that Ms. Sims had several times been

awarded a contract to teach classes in BOP facilities, but then was unable to secure a

qualified instructor.  For example, Ms. Sims accepted a contract on behalf of her other

---

[1] Under the Small Business Act, 15 U.S.C. § 631 et. seq. and implementing regulations, when a CO finds that an "apparent[ly] successful small business offeror lacks certain elements of responsibility," including the capacity, competency, or tenacity necessary to perform the contract, the contacting officer must refer the offeror to the SBA. FAR § 19.602-1. The offeror is then given an opportunity to submit an application to the SBA documenting its responsibility with respect to the contract. FAR § 125.5(d).

[2] When the SBA does issues COC, the "COC is conclusive as to responsibility" and the CO is "required to award the contract without requiring the firm to meet any other requirement with respect to responsibility." FAR § 125.5(m).

company, JRS Management, to provide culinary arts instruction at a federal prison in

Miami, but was unable to furnish a suitable instructor for the base contract period, and

the BOP did not exercise its option to renew the contract.  On another occasion, JRS

informed the agency that it intended to accept another BOP contract, but JRS was unable

to secure insurance, as required by the solicitation, in time to perform.  The agency was

forced to withdraw the offer and seek another bidder after the contract was scheduled to

begin, causing a suspension of educational programing.

JRS does not deny these facts but claims that all of these issues can be excused.

JRS argues that both the SBA and BOP failed to consider contracts which JRS and its

affiliates successfully completed, and thus it challenges both the BOP's determination of

nonresponsibility and the SBA's denial of a COC.  JRS seeks an injunction compelling

the BOP to reinstate JRS in competition for the award and prohibiting the BOP and SBA

from considering JRS's history of not accepting offers in making their responsibility

determinations.

For the reasons that follow, JRS's motion for judgment on the administrative

record is **DENIED** and the government's cross-motion for judgment on the

administrative record is **GRANTED**.  In addition, plaintiff's motion to supplement the

administrative record is **DENIED**.

## I.      BACKGROUND

### A.      Relevant Provisions of the Solicitation

On September 18, 2014, the BOP issued RFQP01011400015 ("the solicitation")

for a single indefinite-delivery requirements contract for the provision of horticulture

instructor services at FPC Alderson in West Virginia.  BOP Administrative Record

("BOP AR") 48-85.  The solicitation was issued as a total small business set aside.  See

FAR § 19.502-2(b).

The solicitation required that the horticulture instructor have a "degree in

horticulture or agriculture," and stated that "[t]eaching experience in a correctional

environment is preferred, although not required."  BOP AR 50.  Under the terms of the

solicitation, the contractor would be required to provide: "six (1) hour sessions per day, 5

days per week . . . . The estimated total number of sessions per year is 1470."  BOP AR

49-50.  The solicitation further provided that that instructor must be available

immediately to "commence full performance of this contract on the effective date of

award of this contract."  BOP AR 61.  The contract would be awarded to the offeree,

"pursuant to an affirmative determination of responsibility, whose quotation, conforming

to the solicitation, is determined to be most advantageous to the Government, considering

technical capability, past performance, and price."  BOP AR 65.

### B. JRS's Proposal and BOP's Finding of Nonresponsibility

On October 17, 2014, JRS submitted a proposal in which JRS acknowledged that

it had "not been awarded any contracts that are of a related nature, size, and scope."  BOP

AR 94.  With respect to an eligible instructor, JRS stated that it intended to offer Charles

Arbaugh, the incumbent horticulture instructor and one of the two other offerors, a

contract to perform the work if JRS was awarded the contract.  BOP AR 93.  JRS stated

that should Mr. Arbaugh decline to work for JRS, JRS had another candidate with a

bachelor's degree in horticulture and significant work experience on dairy farms who

4

could serve as the horticulture instructor. BOP AR 91. This candidate was not a current JRS employee.

On January 29, 2015, the CO issued a Determination and Findings report of nonresponsibility with regard to JRS. The CO found that JRS's quotation was "technically acceptable," and gave JRS a neutral past performance rating "due to the absence of past performance information provided within related nature, size, and scope of the solicitation requirement." BOP AR 160. JRS's base year bid of $41,600 was the lowest price bid received. Id. However, the CO found JRS "to be lacking in an element of responsibility, specifically the capacity for performance." Id. The CO consequently made a determination of non-responsibility based on four issues in JRS's contracting history. BOP AR 160-61.

First, in 2012, JRS had failed to accept an award or commence services for a contract it was awarded to provide a cosmetology instructor at the FPC Alderson, leading to a halt in cosmetology instruction in that prison. The BOP offered the award of the contract to JRS on March 30, 2012, with an effective date of April 9, 2012. BOP AR 217. However, Ms. Sims was unable provide proof of insurance as required by FAR § 52.228-5. On April 2, 2012, Ms. Sims informed the contracting officer that she would not be able to obtain proof of insurance until the following week. BOP AR 215. The CO replied that the cosmetology program could not resume until Ms. Sims provided proof of insurance and returned a signed SF-1449 form. BOP AR 214-15. On April 13, 2012, four days after the effective contract date and one day before performance was supposed to commence, Ms. Sims informed the contracting officer that she was unable to secure

private insurance, but would instead be applying for workers' compensation coverage under a state fund and "it will take about two weeks to secure the policy." BOP AR 213. In response, the CO reminded Ms. Sims that "the cosmetology program at FPC Anderson is currently halted," and noted that even aside from the issue with insurance, Ms. Sims had not identified individuals she would hire to implement the contract. Id. On April 16, 2012, the BOP informed Ms. Sims that it was withdrawing the offer of award because Ms. Sims had not provided the necessary information and JRS had was not able to begin performance by the date required under the contract. BOP AR 212.

Second, the CO identified a contract to provide a culinary arts instructor at Federal Correctional Institution ("FCI") Tallahassee for which the BOP offered an award to JRS but again was forced to withdraw the offer. BOP AR 219-22. The contract had an effective date of October 20, 2014. BOP AR 220. On September 29, 2014, sent the CO on that contract a letter indicating that JRS was unable to guarantee that it could provide an instructor with the requisite years of experience for the entire duration of the contract. BOP AR 219. The CO replied that the BOP would not lower the required experience level for an instructor, and on September 30, 2013, asked that Ms. Sims email him back by close of business that day if she was still interested in the contract. BOP AR 220. Ms. Sims did not reply until October 3, 2014, explaining it had been "a very busy time of year" and she had not had time to read the CO's email. BOP AR 223. The CO informed Ms. Sims that the BOP had awarded the contract to the next lowest bidder. Id.

Third, the CO noted that another entity operated by Ms. Sims, JRS Management, accepted a contract to provide culinary arts instruction at FCI Miami in 2011 but failed to

provide any instruction. BOP AR 103-04. As the Federal Circuit explained, the contract

JRS Management accepted had an effective date of August 8, 2011, but Ms. Sims could

not find an instructor to begin at that time. JRS Mgmt. v. Lynch, 621 F. App'x 978, 979

(Fed. Cir. 2015). The agency issued a task order in March of 2012 for services to begin

on April 2, 2012. Id. JRS Management submitted five potential candidates, four of

whom were deemed unqualified and a fifth who, while qualified, never reported to

complete the background check process and never provided any instruction. Id. The

agency did not exercise its option to extend the contract and it expired in 2012. BOP AR

103-04.[3]

Finally, the CO found that the BOP had found JRS was nonresponsible once

before following JRS's bid on a BOP contract for radiology technician services. BOP

AR 160-61. In the agency's nonresponsibility determination for the radiology contract,

the BOP found that in addition to JRS Management being unable to find appropriate staff

on the FCI Miami culinary contract, JRS's contract with FPC Alderson for a ceramics

instructor was terminated because she ceased providing services several months into the

contract. BOP AR 224.[4] The BOP referred the radiology contract to the SBA, but

---

[3] JRS Management filed a complaint with the Civilian Board of Contract Appeals ("Board") arguing that the agency's decision not to exercise its option to extend the contract was arbitrary and capricious. JRS Mgmt., 621 F. App'x at 980. The Board agreed, but the Federal Circuit remanded on the grounds that the Board had treated the agency's motion to dismiss as a motion for summary judgment without notice to the parties. Id. at 982-83.

[4] This ceramics contract is discussed in Jacqueline R. Sims, LLC v. United States, 600 F. App'x 760 (Fed. Cir. 2015). After JRS Management's contract was terminated after JRS Management provided services for three months out of the one-year contract period, JRS Management challenged negative past performance evaluations arising from this and another contract for which she only provided services for part of the contract period, arguing that JRS Management

because JRS Management never submitted an application, the matter was closed without decision.  BOP AR 228.  However, in his nonresponsibility determination for the instant horticulture contract, the CO mistakenly concluded that the SBA denied the issuance of a COC.  BOP AR 104.

After considering all of these factors, the CO concluded that JRS lacks "an element of responsibility, specifically the capacity for performance, due to an established history between this office and the prospective contractor of failing to accept offers of award and failure to comply with the terms of the contracts awarded."  BOP AR 105. The CO stated that he did "not have a reasonable expectation that this prospective contractor will be able to comply with the required performance schedule."  Id. Consequently, the CO made an official determination of nonresponsibility, and, pursuant to FAR § 19.602-1(a)(2), referred the matter to the SBA for a COC review on January 29, 2015.

### C.    The SBA's Denial of a COC

On February 10, 2015, the SBA informed the CO that JRS had elected to file for a COC in reference to the BOP's referral.  See SBA Administrative Record ("SBA AR") 64.  On February 12, 2015, JRS submitted an Application for Certificate of Competency with a variety of supporting documents including a list of all JRS contracts for the past three years, financial information, and tax returns.  SBA AR 88-234.  On February 25,

---

"could be evaluated only when it physically performed (i.e., taught a ceramics or parenting class) as agreed, and not when it chose not to perform."  Id. at 765.  The Federal Circuit rejected this argument.  See id.

2015, the Procurement Center Representative ("PCR") sent JRS a letter requesting additional information based on the application it had submitted.  SBA AR 566-67.

In reviewing JRS's contract history, the PCR learned that JRS had been awarded a number of contracts that it did not perform.  The PCR noted that "there have been several contracts . . . that you were awarded, but for some reason, they were closed without any work being conducted."  SBA AR 576.  The PCR asked JRS to "provide a complete list of all the contracts that you were awarded" and to "provide your explanation for each individual contract, of why it was not successful" for all contracts that were "never accepted by you, accepted and not started, [or] started not completed . . . ."  Id.  The PCR also asked JRS to "explain what verifiable past performance JRS has performing as a Horticulture instructor for Level 1 certification in Horticulture," noting that he did "not see any experience in Horticulture listed in your application other than a resume of someone who you might be able to hire if you receive the contract."  Id.  The PCR asked if JRS if it had a backup instructor if her proposed instructor was unable to perform.  Id.

On March 2, 2015, Ms. Sims supplemented JRS's application in response to the PCR's questions.  SBA AR 242-361.  Ms. Sims provided the SBA with a list of twenty-five contracts JRS and JRS Management had been awarded in the past three years.  Ms. Sims stated that ten of the twenty-five awards "were not actual contracts" because JRS or JRS Management "declined acceptance of the offers of awards."  SBA AR 345.  Ms. Sims gave several explanations for why her companies submitted a bid and was awarded a contract but did not perform.

Ms. Sims stated that JRS or JRS Management "declined acceptance" of three contracts in favor of accepting other contracts she had been awarded.  SBA AR 246.[5] However, the record shows that there was a contract between the government and JRS for each of those awards, and that the government had subsequently terminated the associated purchase orders pursuant to FAR § 13.302-4 before any work had been done. SBA AR 246, 250, 255, 585.

Ms. Sims stated that JRS or JRS Management declined five contracts because she disagreed with the agency about what regulations applied.  For four of those contracts, Ms. Sims claimed that the offer of award required her to comply with Department of Labor wage requirements, but the solicitations did not include those requirements.  SBA AR 246-47.  Ms. Sims stated that the increased labor costs would have made the contracts unprofitable.[6]  However, though Ms. Sims again asserted that she "declined acceptance" of these contracts, she also notes that the government issued modifications "to cancel the purchase order and de-obligate the funding" for each contract.  SBA AR 248-49.  Ms. Sims stated that she "never accepted" another award to provide a youth minister at the Naval Station in Newport, Rhode Island, because of a disagreement over whether or not JRS was exempt from FAR § 52.222-52 ("Exemption From Application

---

[5] Those contracts were for a Protestant Parish Coordinator at the Air Force Base ("AFB") in Columbus, Mississippi; a Religious Education Coordinator at the AFB in Columbus, Mississippi; and a Catholic Religious Education Coordinator at the AFB in Altus, Oklahoma.  SBA AR 246.

[6] Those contracts were for: Protestant religious education services at Tyndall AFB, Florida; Youth Outreach Ministry services at the Naval Base in San Diego, California; and Youth Outreach Ministry services at the Naval Base in Ventura, California; and Youth Outreach Ministry Services at the Naval Base in Coronado, California.  SBA AR 246-48.

of the Service Contract Labor Standards to Contracts for Certain Services"). SBA AR 247.

Ms. Sims asserts that she did not perform on the remaining two awards because of disagreements with the agency over the terms of the contract. Ms. Sims stated that she "declined acceptance" of another award to provide a "Catholic DRE Coordinator" for the Navy in Oceana, Virginia. SBA AR 247. Ms. Sims explains that her company submitted a quoted price based on ten months of service, but the purchase order was only for seven months, making performance unprofitable. Once again, a modification was issued "to cancel the purchase order and de-obligate the funding." Id. Finally, with respect to a contract to provide a Catholic Parish Coordinator for Fort Huachuca, Arizona, Ms. Sims stated that the delivery date in the award was different in the delivery date in the solicitation, and that she and the agency could not come to an agreement on an acceptable delivery date. SBA AR 248. The contract was subsequently terminated for convenience. Id.

With regard to the PCR's questions about the availability of a qualified horticulture instructor, JRS indicated its understanding that it was required to offer the position to the incumbent, Mr. Arbaugh. SBA AR 353. Should Mr. Arbaugh decline JRS's offer to continue serving as a horticulture instructor at FPC Alderson, JRS stated that it had two potential candidates, Richard Miller (listed in its initial bid) and Elizabeth Ryan, who had "indicated a willingness to work as either the primary or substitute Horticulture Instructor." Id. Ms. Sims further stated that her other company, JRS Management, had eleven years of experience offering horticulture instructors under five

contracts. SBA AR 354.  However, JRS Management's horticulture instruction contracts were executed in Florida and Texas, SBA AR 414, 446, not West Virginia where this contract was to be executed, and JRS gave no indication that the instructors on JRS Management's contacts would be available to perform the FPC Alderson contract.  In order to alleviate concerns that JRS would not have an instructor available on the effective date of the contract, the SBA suggested that JRS seek letters of intent from the two potential instructors she listed.  SBA AR 759.  However, JRS did not provide any confirmation that either of its proposed candidates would be willing and available to perform.  Id.

The PCR reviewed JRS's answers and also contacted several contracting officers who were responsible for overseeing JRS's contracts.  SBA AR 648–702.  He spoke with Ms. Catherine Purvis, Supervisory Contract Specialist at the U.S. Navy, where Ms. Sims had previously been awarded two contracts.  SBA AR 651.  Ms. Purvis stated as follows: "I cannot provide any information about the ability of Jacqueline R. Sims to perform on a contract.  All I can tell you is that she has protested on four different solicitations, and one contract[,] and was offered another contract that she didn't accept . . . ."  SBA AR 651.[7]

The PCR also spoke with Charles Hawkins, a Supervisory Contract Specialist at the Federal Correctional Complex in Terra Haute, Indiana, where Ms. Sims had

---

[7] In the COC Narrative, discussed in detail below, the PCR noted that Ms. Purvis "suggested that I research JRS on GAO.  After reviewing GAO I found that JRS has 56 protests since January of 2011. 44 of the protests were denied or dismissed.  All of the others are either undecided or were withdrawn."  SBA AR 747.

previously been awarded a contract.  SBA AR 666-67.  According to the PCR, Mr.

Hawkins "said they have not had any problems with her but all of their efforts have been

the same instructor."  SBA AR 666.

The PCR also spoke with Simone Curtis and Tamera Butler, two COs in Fort Polk,

Louisiana, where Ms. Sims had been awarded three contracts.  The COs on that contract

stated that while "JRS performed satisfactorily," the Army

> chose not to exercise the options because they were unable to come up with
> a bilateral agreement on terms.  JRS was not happy with the terms of the
> original contract and was asking for language to be included in a
> modification that will remove all of her liability if the instructor/employee
> did not meet the requirements of the contract.

SBA AR 697.  Ms. Curtis told the PCR that Ms. Sims is "very difficult to deal with," and

described her as "aggravating, unreasonable, argumentative and litigious."  Id.

On March 5, 2015, the SBA prepared a Summary of Certificate of Competency

Review Committee Meeting No. 2891.  After reviewing the information submitted by

JRS, the committee found that "it appears that JRS has expertise in finding and filling

teaching positions related to religious education but has no experience in the last three

years completing a contract for any other type of training."  SBA AR 760.  The

committee noted that JRS has completed twelve contracts related to religious education in

the past three years, and has five ongoing contracts, all but one for religious instruction.[8]

The committee had found that JRS had not made even tentative offers to any instructors,

and has no current employees qualified as horticulture instructors.  SBA AR 759.

---

[8] At the time the SBA made its decision, JRS had not begun work on its only current non-
religious contract, which was for HVAC instruction.  SBA AR 96, 758.

Therefore, the committee found that Ms. Sims "does not currently have any employees with the credentials required to instruct horticulture." SBA AR 760. The committee concluded that "JRS has demonstrated that approximately 25% of the time, she does not perform on contracts that are offered to her. From her own account, official documentation and the accounts of her previous customers, she does not seem to be able to come to a successful resolution to administrative issues if they arise." Id. The vote to decline JRS's COC application was unanimous. SBA AR 761. The BOP subsequently offered the contract award to the next-lowest bidder, the incumbent horticulture instructor, Mr. Arbaugh. BOP AR 169-72.

JRS subsequently filed a pro se complaint in this court seeking to set aside the BOP and SBA nonresponsibility determinations, compel the BOP to reinstate JRS in competition for the award, and prohibit the BOP and the SBA from considering JRS's history of not accepting offers in making their responsibility determinations. Briefing was completed on the parties' cross-motions for judgment on the administrative record and on JRS's second motion to supplement the administrative record on October 29, 2015. The court has determined that oral argument is not necessary.

## II.   JRS'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD IS DENIED

Before turning to the merits of the case, the court must first resolve JRS's second motion to supplement the administrative record, [9] filed on October 13, 2015, asking the

---

[9] The court denied JRS's first motion to supplement the record with (1) materials related to other awards that were offered to JRS or Ms. Sims; (2) reports assessing JRS's performance as a government contractor; (3) records indicating the outcomes of other protests filed by JRS; and (4) an SBA record related to a previous certificate of competency referral. ECF No. 16. JRS

court to add the following documents to the record:  (1) the declaration of the BOP CO

included in the government's opposition to JRS's first motion to supplement the record,

and (2) a memorandum entitled Office of Federal Procurement Policy Memorandum:

Protests, Claims, and Alternative Dispute Resolution (ADR) as Factors in Past

Performance and Source Selection Decisions (April 1, 2002) ("the memorandum").  In

the alternative, JRS requests that the court take judicial notice of the two documents.

The CO's declaration affirms his statements in his Rational for Determination of

Nonresponsibility, BOP AR 2011, which JRS had previously moved to strike, regarding

the information he reviewed in making his determination.  JRS argues that the CO's

declaration establishes that the CO did not examine JRS's current contracts when

conducting his responsibility determination.  JRS further argues that the affidavit is

necessary to demonstrate that the BOP is not entitled to the presumption of regularity that

ordinarily applies to agency action because, according to JRS, the affidavit shows that the

CO did not include in the administrative record documents he claims to have consulted.

The memorandum states, among other things, that procuring agencies should not

downgrade a bidder during the source selection process because the bidder has previously

filed bid protests or claims.  JRS argues that the memorandum should be added to the

---

also moved to strike from the administrative record the CO's rational for the determination of
nonresponsibility and the documents the CO stated that he relied on in making that
determination. ECF No. 20.  The court denied the motion to supplement in its entirety, denied
the motion to strike with respect to the documents that the CO stated that he had considered in
making his decision. ECF No. 26.  The court granted JRS's motion to strike with respect to the
CO's rational, which government agreed was not properly part of the administrative record
because the CO had written the document after he became aware of JRS's bid protest. Id.

administrative record because, contrary to the memorandum's instructions, "the record shows that the SBA considered JRS's protest activities before the GAO in its COC determination." Pl.'s 2d Mot. to Supp. AR 8.

The government argues that JRS's motion should be denied on the grounds that "it is improper to supplement the record merely for the purpose of providing evidence in support of JRS's arguments[,]" and that "JRS fails to understand that the Government, like JRS, can only support its arguments with evidence actually in the administrative record." Def.'s Opp. to Pl.'s 2d Mot. to Supp. 4-5. The government further contends that "because JRS has failed to meet the strict standard required for supplementation, judicial notice of the documents is unwarranted." Id. at 5.

It is well-settled that the court's review for both the CO and SBA decisions is limited to the administrative record. See RCFC 52.1. "Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record." Young v. United States, 497 F. App'x 59, 61 n.8 (Fed. Cir. 2012) (citing Bannum Inc. v. United States, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005)). Instead, this court is to "resolve[] questions of fact with references to the administrative record. . . . In such instances, the Claims Court may make factual determinations and legal conclusions based on the administrative record in the first instance." Id. (citing Bannum, 404 F.3d at 1346). Under this standard, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Home Products Int'l, Inc. v. United States, 633 F.3d 1369, 1379 (Fed. Cir. 2011) (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985)). It is

also well-settled that in order to succeed on a motion to supplement the administrative record a party must show that "omission of extra record evidence precludes effective judicial review." Axiom Res. Mgmt. v. United States, 564 F.3d 1375, 1380 (Fed. Cir. 2009).

Here, the court agrees with the government that JRS has not met the strict standards for supplementing the record. The court has examined the two documents that JRS wishes to add to the administrative record and finds that they are not necessary for effective judicial review. The affidavit only reiterates what the CO stated in his Determination of Nonresponsibility, and does not add any evidence regarding the CO's credibility or the appropriateness of his process or conclusions. Likewise, the memorandum does not give the court any information about what the agency did in this case. The court therefore finds that supplementation of the administrative record is not warranted.

The court has determined, however, that it is appropriate to take judicial notice of the memorandum as a public document. See Alabama Aircraft Indus., Inc.-Birmingham v. United States, 82 Fed. Cl. 757, 765 (2008). However, contrary to JRS's contentions, this document does not support JRS's claims. First, as discussed below, though the SBA record does include some discussion of Ms. Sims's history of filing multiple bid protests in the past, there is no evidence that the SBA made its decision on that basis. Second, the memorandum does not apply to the SBA because the memorandum is addressed to procuring agencies, and the SBA is not a procuring agency. Cf. Centech Grp., Inc. v. United States, 554 F.3d 1029, 1039-40 (Fed. Cir. 2009) (noting that the SBA is not the

procuring agency and the procuring agency may award a contract even if the SBA denies a COC).

## III.    LEGAL STANDARDS FOR DECIDING BID PROTESTS

This court exercises jurisdiction over JRS's post-award bid protest pursuant to 28 U.S.C. § 1491(b).  In a bid protest, the court may only set aside an award if the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Palladian Partners, Inc. v. United States, 783 F.3d 1243, 1252 (Fed. Cir. 2015) (quoting Savantage Fin. Servs. v. United States, 595 F.3d 1282, 1285 (Fed. Cir. 2010)).

This standard is "highly deferential."  Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  The Federal Circuit has held that "[t]he court's task is to determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  Palladian Partners, Inc., 783 F.3d at 1252 (quoting Savantage, 595 F.3d at 1285-86).  "[W]hen such decisions have a rational basis and are supported by the record, they will be upheld."  NCL Logistics Co. v. United States, 109 Fed. Cl. 596, 610 (2013) (quoting Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002)).  Further, courts have found that the SBA is entitled to "special deference" when the court is "reviewing the merits of an SBA competency determination" because of the SBA's special expertise in this area.  CSE Const. Co. v. United States, 58 Fed. Cl. 230, 248 (2003) (citing Stapp Towing Inc. v. United States, 34 Fed. Cl. 300, 306 (1995)).

## IV.   DISCUSSION

JRS is challenging both the BOP's finding of nonresponsibility and subsequent referral to the SBA, and the SBA's decision not to issue a COC.  Each portion of the challenge is addressed in turn.

### A.   The BOP's Nonresponsibility Determination was not Arbitrary or Capricious

Before awarding a contract, a CO must "make[] and affirmative determination of responsibility."  FAR § 9.103(b).  Further, "[i]n the absence of information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of nonresponsibility."  Id.  In order to be deemed responsible, a prospective contractor must:

> (a) Have adequate financial resources to perform the contract, or the ability to obtain them . . . ;
> (b) Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments;
> (c) Have a satisfactory performance record . . . . A prospective contractor shall not be determined responsible or nonresponsible solely on the basis of a lack of relevant performance history . . . ;
> (d) Have a satisfactory record of integrity and business ethics . . . ;
> (e) Have the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them (including, as appropriate, such elements as production control procedures, property control systems, quality assurance measures, and safety programs applicable to materials to be produced or services to be performed by the prospective contractor and subcontractors) . . . ;
> (f) Have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them; and
> (g) Be otherwise qualified and eligible to receive an award under applicable laws and regulations . . . .

FAR § 9.104-1.  The burden is on the contractor to affirmatively demonstrate its responsibility.  FAR § 9.103(c).

JRS makes several arguments that the CO's determination of nonresponsibility was unreasonable.  First, JRS argues that the solicitation did not include a required or proposed performance schedule and thus the CO could not base his nonresponsibility determination on JRS's inability to meet one.  Second, JRS argues that prior instances when JRS refused to accept a contract after submitting a successful bid were irrelevant to JRS's ability to perform under this contract.  Third, JRS argues that the CO should not have considered JRS Management's conduct as part of a nonresponsibility determination. Fourth, JRS argues that the CO's reliance upon the mistaken belief that JRS had been denied a COC for another contract makes the nonresponsibility decision in this case arbitrary and capricious.

The government counters that the information the CO considered was relevant and consistent with the FAR.  The government further asserts that JRS was not prejudiced by the CO's mistaken belief that JRS had previously been denied a COC because JRS would have received a nonresponsibility determination based on the other factors the CO considered.

For the reasons set forth below, the court finds that none of JRS's arguments are persuasive and that the BOP's nonresponsibility determination was not irrational or contrary to the FAR.

      1.      **The Solicitation Required the Contractor to Begin Performance from the Date of Award and it was Reasonable for the CO to Consider JRS's Ability to Meet that Schedule.**

JRS asserts that the CO could not, consistent with the solicitation, refer her to the SBA for a COC determination on the basis of her inability to timely begin performance

because, according to JRS, the solicitation did not include a fixed performance schedule.

However, the record does not support this contention.

Under the FAR, "the time for delivery or performance is an essential contract element and shall be clearly stated in solicitations." FAR § 11.401. The time for delivery can be expressed in several ways, including "the date of award or acceptance by the government" "the date shown as the effective date of the contract." Id. at § 11.403(a)(2). In this case, the solicitation stated that the awardee is expected to "commence full performance . . . on the effective date of the award of this contract." BOP AR 61. The period of performance would run from twelve months from the effective date of award. Id. Further, the solicitation provided that task orders "may be issued from the first day of the current performance period through the last day of the current performance period." BOP AR 52.

The court therefore finds that the solicitation delineated a performance period, consistent with the FAR, that established a time of performance commencing on the effective date of award. See BOP AR 61. Further, the court finds that the BOP's concerns that JRS would not be able to timely perform were especially pertinent given that the horticulture education program was ongoing. Accordingly, it was not arbitrary and capricious for the CO to judge JRS's responsibility based on whether JRS would be in a position to begin performance on the effective date of the award.

### 2.   It was Reasonable to Consider Previous Awards that the BOP Offered to JRS which JRS did not Perform.

JRS contends that the CO should not have considered JRS's inability to accept the cosmetology instructor contract at FPC Alderson and the culinary arts instructor contract at FCI Tallahassee, arguing that it is inappropriate to use unaccepted offers in evaluating a prospective contractor's capacity.  The government counters that the FAR requires a CO to take a wide variety of information into account in making a nonresponsibility determination, and asserts that JRS's past non-acceptance of contracts offered by BOP is both a proper factor to consider under the FAR and relevant to JRS's ability to perform under this contract.

The FAR states that a CO must base a nonresponsibility determination on a wide variety of sources that bear on a prospective contractor's ability to perform.  See FAR § 9.105-1(c).[10]  The Federal Circuit has explained that "responsibility determinations are largely a matter of judgment," and "contracting officers are generally given wide

---

[10] FAR § 9.105-1(c) states:
    In making the determination of responsibility, the contracting officer shall consider information in FAPIIS [Federal Awardee Performance and Integrity Information System] . . . and any other relevant past performance information. In addition, the contracting officer should also use the following sources of information to support such determinations:
        (1) Records and experience data, including verifiable knowledge of personnel with the contracting office, audit offices, contract administration offices, and other contracting offices.
        (2) The prospective contractor-including bid or proposal information, questionnaire replies, financial data, information or production equipment, and personnel information.
        (3) Commercial sources of supplier information of a type offered to buyers in the private sector.
        (4) Preaward survey reports.
        (5) Other sources such as publications; suppliers, subcontractors, and customers of the prospective contractor; financial institutions; Government agencies; and business trade associations.

discretion to make this decision." <u>John C. Grimberg Co. v. United States</u>, 185 F.3d 1297, 1303 (Fed. Cir. 1999).  Therefore, while FAR § 9.105-1(c) requires a CO to obtain sufficient information before making determination of responsibility, a CO "is the arbiter of what, and how much, information he needs."  <u>Id.</u>[11]

JRS argues that, to the extent the FAR requires a CO to consider a prospective contractor's ability to timely perform as a factor in determining responsibility, <u>see</u> FAR § 9.104-1(b), the CO should have only considered JRS's ability to timely perform in light of JRS's present obligations under other contracts, and not consider any previous contracts.  JRS appears to contend FAR § 9.104-1(b), which states that in order to be deemed responsible, a contractor must be able to comply with the performance schedule "taking into consideration all existing commercial and governmental business commitments" means that the CO may <u>only</u> consider existing commitments when considering whether a prospective contractor may timely perform.  However, given the degree of discretion a CO has in determining what information is relevant, this narrow reading is implausible.  In this regard, JRS's history of timely performance under other contracts is a relevant consideration.  The court therefore rejects JRS's argument that the FAR does not allow the CO to consider this type of information.

---

[11] JRS argues that the CO failed to consider relevant information in the FAPIIS before making his decision, in violation of FAR § 9.105-1(c).  However, JRS does not provide any evidence sufficient to rebut the presumption of regularity afforded to COs, nor does it identify how she was prejudiced by the alleged failure to consider this information.  The issue not is whether JRS ever successfully completed a contract, but the undisputed fact that it had not performed on other contracts under similar circumstances

JRS further argues that the fact that JRS declined or was unable to perform on BOP's offers in the past is not relevant to its ability to perform under this contract because JRS had not officially entered into those contracts with BOP.  However, as the government notes, JRS's eventual refusal or inability to accept and perform previous contracts JRS had been awarded caused delays in the BOP's ability to obtain services and thus is directly relevant to the issue of whether JRS would be able to timely perform this contract.  For example, the government notes that the cosmetology program was halted while the government was waiting for JRS to complete the requirements for beginning performance.

JRS's non-acceptance and non-performance of contracts is also relevant to FAR § 9.104-1, which states that a prospective contractor must have at the very least "the ability to obtain" the organizational and technical skills necessary to perform the contract.  The undisputed record shows that JRS was not able to obtain qualified personnel on time or for the duration of the contract in several instances when JRS purported to accept a BOP contract.

### 3.    The CO Reasonably Relied on a JRS Management Contract in Finding JRS Nonresponsible.

JRS argues that the CO also erred in considering JRS Management's failure to begin contract performance on the FCI Miami culinary contract in making his nonresponsibility determination.  JRS argues that there is nothing in the record showing that JRS Management is affiliated with JRS, and asserts that the two companies are distinct entities for tax purposes and have different government contracts.  The

government counters that under the FAR, JRS and JRS Management are affiliates and that the FAR allows COs to consider the past performance of affiliates in the context of a responsibility determination.

FAR 9.104-3(c) specifies that "the contracting officer shall consider [a prospective contractor's] affiliate's past performance and integrity when they may adversely affect the prospective contractor's responsibility." Under the relevant provisions in the FAR, two entities are affiliates if "either one controls or has power to control the other." FAR § 19.101. When "determining whether affiliation exists, consideration is given to all appropriate factors including common ownership, common management, and contractual relationships[.]" Though JRS argues that the record before the BOP lacked evidence that JRS and JRS Managements are affiliates, JRS does not deny the truth of the BOP's conclusion. In her response to the SBA's questions, Ms. Sims conceded that she "operates under" both JRS and "Jacqueline R Sims LLC dba JRS Management," and confirmed that both JRS and JRS Management are run from her home office. SBA AR 243.[12] The CO's conclusion that the two entities are affiliates was reasonable given his understanding that Ms. Sims owned and operated both concerns. See BOP AR 224.

JRS asserts that to the extent the CO considered JRS Management's failure to perform on an offered contract, he was obligated to also consider JRS Management's

---

[12] The government also notes that in JRS's submission to the SBA, JRS took credit for horticulture instruction contracts that were performed by JRS Management. Def.'s MJAR 23 (citing SBA AR 244, 293-344). JRS also stated in its offer to the BOP that it had "over 10 years of experience in providing horticultural teaching services" and that "experience was gained via managing federal contracts that have been awarded to a second company that is also wholly owned by Jacqueline R. Sims . . . ." BOP AR 93.

history of successfully fulfilling contracts. The court disagrees. The FAR states that an affiliate's past performance and integrity shall be considered to the extent that they "may adversely affect the prospective contractor's responsibility." FAR § 19.101. Here, the CO was concerned with JRS's ability to perform this contract in light of its history of not performing after receiving an award. It was not irrational for the CO to consider an instance when JRS Management failed to perform under similar circumstances. The fact that JRS Management successfully completed other contracts does not mean that the CO acted irrationally in seeking to determine whether Ms. Sims's other companies also failed to fulfill contractual obligations in a similar manner as JRS. See Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002) ("When such decisions have a rational basis and are supported by the record, they will be upheld.").

### 4. The CO's Mistaken Determination that JRS was Previously Denied a COC Did Not Prejudice JRS.

Finally, JRS argues that the CO's nonresponsibility determination should be set aside on the grounds that the CO mistakenly believed that the SBA had denied JRS's COC application of another contract. While the CO was mistaken in his belief that JRS was denied a COC,[13] the court finds that this error alone is not enough to set aside the BOP's decision. "[T]he FAR does not require that each of the contracting officer's conclusions be independently sufficient on its own to support a finding of nonresponsibility." MG Altus Apache Co. v. United States, 111 Fed. Cl. 425, 451

---

[13] After the BOP made a finding of nonresponsibility and referred the matter to the SBA, Ms. Sims never submitted a COC application and the SBA closed the matter without decision. BOP AR 224-28.

(2013).  Instead, the "nonresponsibility determination as a whole must be rational."  Id.

The court agrees with the government that the CO relied on multiple factors in

determining JRS's nonresponsibility and, taken as a whole, these factors were sufficient

to form a rational basis for his decision.[14]

Therefore, the court finds that the BOP's decision is adequately documented and

finds that the nonresponsibility determination and referral to the SBA for COC review

was not arbitrary and capricious.  In this case, the CO reasonably believed that JRS

lacked capacity to perform pursuant to the applicable FAR regulations and properly

referred the matter to the SBA.

### B.      The SBA's Decision to Deny the COC was not Arbitrary or Capricious.

After the BOP determined that JRS lacked capacity to perform and was thus

nonresponsible, the BOP was required to refer the matter to the SBA.  FAR § 19.602-1.

When issued, a COC represents the SBA's determination that the applicant "is

responsible (with respect to all elements of responsibility, including, but not limited to,

capability, competency, capacity, credit, integrity, perseverance, tenacity, and limitations

on subcontracting) for the purpose of receiving and performing a specific Government

contract."  FAR § 19.601.  The SBA's determination of responsibility is governed by the

---

[14] Additionally, JRS argues that it has been "de facto debarred" by the BOP from receiving any
future contracts because the CO mistakenly relied upon JRS's previous COC referral.  Pl.'s
MJAR 21.  This court has previously held that a plaintiff alleging de facto debarment "must
show evidence demonstrating that the agency will not award the contractor future contracts."
NCL Logistics Co. v. United States, 109 Fed. Cl. 596, 620 (2013); see also TLT Const. Corp. v.
United States, 50 Fed. Cl. 212, 215 (2001) (establishing that a plaintiff must demonstrate a
"systematic effort by the procuring agency to reject all of the bidder's contract bids.").  Because
JRS has not offered more than mere argument of de facto debarment, the court finds this
argument meritless.

same factors listed in FAR § 9.104-1 that guide the procuring agency's decision. See

CSE Const. Co. v. United States, 58 Fed. Cl. 230, 250 (2003).  Further, the "SBA may

deny a COC for reasons of nonresponsibility not originally cited by the contracting

officer."  FAR § 125.5(f)(1).

JRS argues that the SBA's decision not to issue a COC must be set aside because

it was cursory, conclusory, and based on non-relevant or erroneous factual allegations.

First, JRS argues that the SBA impermissibly imposed a requirement that JRS have a

qualified instructor on staff when there was no such requirement in the solicitation.

Second, JRS argues that it was improper for the SBA to consider other contracts it and

JRS Management were awarded but did not perform.  Third, JRS argues that the SBA

improperly contacted references as part of its investigation when the SBA knew that JRS

did not have contracts of a related nature, size, and scope and therefore none of the

references were relevant.  Finally, JRS argues that the SBA erred by not giving sufficient

consideration to the horticulture instruction contracts that JRS Management successfully

managed.

For the reasons that follow, the court finds that JRS's arguments are insufficient to

meet the arbitrary and capricious standard applied to this court's review of agency action.

### 1.    The SBA Reasonably Considered that JRS did not have a Horticulture Instructor Committed to Perform.

JRS argues that the SBA erred in denying the COC on the grounds that JRS did

not have an instructor ready to perform the contract.  According to JRS, the solicitation

did not require it to have an instructor on staff.  Rather, JRS argues the solicitation only

requires bidder to list candidates potentially available.  JRS further argues that FAR §

52.222-17, which requires new contractors to offer continued employment to an

incumbent's "service employees" under certain circumstances, required JRS to first offer

the instructor position to the incumbent and thus it could not commit another instructor.

The government counters that FAR § 52.222-17 is not applicable because it exempts

professionals including instructors of this type, and further asserts that the SBA correctly

considered JRS's failure to identify a specific instructor when it denied the COC.

     The court agrees with the government that the SBA's denial of a COC based in

part on JRS's failure to identify a committed instructor was rational.  As an initial matter,

it appears that JRS's reliance on FAR § 52.222-17 to suggest that it could rely on the

incumbent serve as the instructor is misplaced.  The FAR states that only "service

employees" of the predecessor contractor shall be offered the right of first refusal by the

successor contractor, and exempts individuals employed in a "professional capacity" as

defined in 29 C.F.R. § 541.  FAR § 52.222-17(a).  A teacher is a "professional" for the

purpose of the regulations when the teacher's "primary duty" is "teaching, tutoring,

instructing or lecturing in the activity of imparting knowledge and who is employed and

engaged in this activity as a teacher in an educational establishment . . . ."  29 C.F.R. §

541.303(a).  Teachers "of skilled and semi-skilled trades and occupations" are classified

as professionals.  Id.  An "educational establishment" is defined to include "an institution

of higher education or other educational institution" and may include "post-secondary

career programs."  29 C.F.R. § 541.204(b)

In this case, the solicitation specified that the instructor was to teach an "established horticulture program" that was "approved through the New River Community College." BOP AR 49. The instructor was required to have a degree in horticulture or agriculture. BOP AR 50. In Wilks v. District of Columbia, the court found that a prison's Office of Educational Services was an educational establishment for the purposes of the regulations because instructors were certified by D.C. Public Schools and conducted formal classes. 721 F. Supp. 1383, 1386 (D.D.C. 1989); see Astor v. United States, 79 Fed. Cl. 303, 316 (2007) (citing Wilks with approval).

Therefore, it appears that this position also meets the standard for teacher under the regulations. However, even if JRS was required to give Mr. Arbaugh a right of first refusal under FAR § 52.222-17, nothing in the regulation prohibited JRS from making a tentative or conditional offer to other instructors in the event that Mr. Arbaugh declined its offer.[15] Given JRS's extensive history of being unable to perform contracts when it did not have a committed instructor, the SBA reasonably suggested that JRS obtain letters of intent from either or both of the two potential other instructors. SBA AR 759. When JRS elected not to pursue that request and provide the necessary assurance, JRS ran the risk that the SBA would find that JRS might not be able to provide an instructor on the effective date of the contract.

---

[15] Here, the incumbent was another offeror whose quoted price was higher than JRS's. BOP AR 100-01. Under those circumstances, it was rational for the SBA to consider whether JRS had a back-up candidate available even if JRS is correct that the incumbent had a right of first refusal.

In this regard, the court agrees with the government that the SBA did not deny the COC on the grounds that JRS did not have an instructor on the payroll. Rather, given JRS's history of failing to secure instructors under similar circumstances, the SBA sought assurance that JRS would be able to provide an instructor on the effective date of the contract. Because JRS did not address this issue even after the SBA expressed concerns and gave JRS instructions that would have alleviated the problem, it was not irrational for the SBA to conclude that without a commitment from another instructor, JRS might lack the capacity to perform.

### 2.    The SBA Reasonably Considered JRS's History of not Performing after being Awarded a Contract

JRS argues that SBA should not have considered the approximately twenty-five percent rate of unaccepted awards in making its decision because JRS had well-founded reasons for declining those awards. According to JRS, "JRS heeded the SBA's advice with regard to being cautious before entering into contracts with the federal government" and points to the SBA's website to show that the SBA ignored its own advice in using the unaccepted offers of award as a basis for denying the COC. Pl.'s Reply 27. The government responds by pointing out that "[r]egardless of JRS's reasons for refusing awards, the fact remains that the SBA's decision to consider this information was both rational and reasonable[.]" Def.'s Reply 15.

The court finds, given the extensive number of contracts that JRS has acknowledged being awarded but not performing, that the SBA's consideration of this history was not arbitrary or capricious. This is not a case where the SBA ignored JRS's

31

reasons for declining those contracts.  To the contrary, JRS's reasons are clearly reflected in the record.  However, the SBA could reasonably conclude that JRS engaged in a pattern of bidding and receiving contract awards even where JRS was aware that it might not have the capacity to begin or complete them. [16]  In addition, the record shows that in a number of instances, the contracts were not declined but were accepted by JRS but then closed without any work being performed, or the agency was forced to rescind the offer after JRS's delays in meeting the contract's requirements.

JRS's reliance on the SBA website is also misguided.  The website states that "a prospective contractor's response to an RFQ is not an offer that can be accepted to form a binding contract" and the SBA "cautions small businesses to carefully and completely read solicitations, to use a pricing strategy that considers all costs allowing for sufficient overhead/profit, and to read a proposed contract carefully before signing."  Pl.'s Reply 27.  However, the fact that the SBA recommends that contractors carefully review the terms of a contract before signing it does not imply that the SBA encourages prospective offerors to submit bids for contracts that they do not think they will be able to perform.  As discussed above, JRS's failure to accept approximately a quarter of the bids accepted by the government is a significant number.  In addition, its failure to take on the work it

---

[16] In that connection, this case differs from CSE, which held that the SBA's investigation did not comply with the FAR because the SBA failed to consider the plaintiff's three unfavorable references within the context of plaintiff's overall record of good performance.  58 Fed. Cl. at 253.  In this case, the SBA's concerns with JSR were not based on the quality of JSR's performance in the instances when JRS actually performed the, but were focused on JSR's history of not performing at all after being offered and even accepting an award.

was offered has caused delays in programing.  Therefore, it was rational for the SBA to consider JRS's history.

### 3.    The SBA Reasonably Considered JRS's References.

JRS argues that the SBA's decision should also be set aside because the SBA improperly relied on comments from three of JRS's references when the references worked with JRS on contracts other than horticulture instruction, and are therefore not relevant. The government responds that it was rational for the SBA to consider information received from JRS's references when determining whether to issue a COC.

The SBA was required to conduct a comprehensive investigation as to whether JRS was responsible, and the investigation properly included contacting third parties with knowledge of JRS's performance on other contracts.  See FAR § 125.5(d)(3) ("SBA personnel may obtain clarification or confirmation of information provided by the applicant by directly contacting suppliers . . . and other third parties upon whom the applicant's responsibility depends.").  Regardless of whether the references offered insights into JRS's performance on a horticulture contract, the references offered insights into how JRS approaches its commitments under its other instructional contracts. Accordingly, the court finds that the SBA decision denying the COC need not be set aside on this basis.

JRS also argues that the SBA improperly denied the COC because of JRS's history of filing bid protests.  However, the SBA decision document does not rely on this history.  To the contrary, the decision document focused on JRS's history of not

performing on awarded contracts, JRS's failure to identify a committed instructor, and JRS's difficulty with resolving issues with contracting officers.  SBA AR 760.

### 4.      The SBA's Decision not to Credit JRS Management's Experience does not make its Decision Unreasonable.

Although JRS acknowledges that it did not have prior horticulture instruction contracts, it argues that the SBA "erred when it concluded that JRS's expertise was limited to finding and filling teaching positions related to religious education." Pl.'s Rep. 20. According to JRS, the record shows that one of JRS's active contracts is for an HVAC instructor at FCI LaTuna, Texas, and therefore "the record shows that JRS's experience is not limited to religious education." Id. JRS further argues that the SBA failed to take into account that Ms. Sims has over 11 years of experience in managing five horticulture instruction contracts through JRS Management, and that she had experience within the last three years in managing a horticulture contract.

The government responds that "the SBA procurement analyst did refer to the FCI La Tuna contract as being a non-religious contract, but noted that the work has not started yet on that contract." Def.'s Reply 12.  The government also argues that, regardless of whether JRS Management had horticulture instruction experience, it is undisputed that JRS did not have experience with horticultural instruction and thus the SBA analyst was not incorrect.

JRS's COC application indicates that JRS Management did have experience fulfilling horticulture contracts within the three years prior to JRS's bid in this case.  SBA AR 413-64.  However, assuming that the SBA was required to consider these contracts,

the court finds that the error was harmless.  The record shows that JRS Management's horticulture instruction contracts were in a different geographic area and involved different instructors who were not available to perform the contract in this case.

Ultimately, it is the court's duty to consider whether the evidence in the record supported the SBA's decision to deny the COC, not to hold the agency to a standard of perfection.  Am. Auto Logistics, LP v. United States, 117 Fed. Cl. 137, 205 (2014), aff'd, 599 F. App'x 958 (Fed. Cir. 2015) ("It is not the court's role to determine whether the evaluations were perfect or even as good as they could be . . . .").  Here, the evidence supports the SBA's conclusion.  It is undisputed that JRS had a repeated history of failing to provide a qualified instructor for contracts it was awarded when JRS did not have that personnel available.  The record shows that JRS did not have a committed instructor for the subject contract, and the record also showed that JRS had a history of strained relations with contracting officers.  In light of JRS's track record, the court finds that the SBA's conclusion regarding JRS's lack of capacity with regard to the subject contract was reasonable.

## V.  CONCLUSION

For the reasons stated above, JRS's motion to supplement the administrative record is **DENIED**.  JRS's motion for judgment on the administrative record is **DENIED**.  The government's cross-motion for judgment on the administrative Record is **GRANTED**.  The clerk is instructed to enter judgment accordingly.  No costs.[17]

---

[17] Because JRS has not succeeded on the merits of this case, JRS is not entitled to injunctive relief.

**IT IS SO ORDERED.**

NANCY B. FIRESTONE
Senior Judge